520 So.2d 99 (1988)
In re the ESTATE OF Richard ROBERTSON, Deceased.
No. 87-2259.
District Court of Appeal of Florida, Fourth District.
February 17, 1988.
*100 Perry W. Hodges, Jr., Fort Lauderdale, for appellant Helen Robertson.
Kenneth R. Mikos of Friedrich, Blackwell, Mikos & Ridley, P.A., Fort Lauderdale, for appellee Linda Hill Allard.
HERSEY, Chief Judge.
Finding that the decedent, Richard Robertson, was survived by an illegimate daughter, Nicole, the trial court vacated an earlier order which had designated appellant Helen Robertson, the decedent's mother, as sole heir of the estate.
In July 1976 the decedent had a relationship with Linda Hill, who became pregnant. Linda thereafter married David Allard in September 1976. Linda Hill Allard gave birth to Nicole Allard in March 1977. On April 2, 1983, Richard Robertson died intestate. Appellant obtained an order of family administration. Linda, as guardian of Nicole, petitioned to set this order aside.
There was substantial competent evidence to support the following findings of the trial court:
1. Nicole Allard was and is the natural daughter of the decedent, Richard Robertson.
2. The decedent's natural mother, Helen Robertson, filed with this Court on the 2nd of March, 1987, a Petition for Family Administration wherein she failed to disclose the status of Nicole Allard as the decedent's natural daughter. The Court finds that said failure on the part of Helen Robertson was intentional, deliberate and constituted a fraud upon this Court.
3. The evidence establishes that the decedent acknowledged both in writing and orally on numerous occasions subsequent to the birth of his daughter, Nicole, his paternity, resided with both the child and her natural mother for some five (5) years prior to his death as a family unit, contributed to their support and expressed on a number of occasions his desire that his daughter, Nicole, inherit from him.
4. Helen Robertson knew of the decedent's acknowledgment and in fact on a *101 number of occasions accepted Nicole and regarded her, along with other family members, as the decedent's natural child.
Based on these findings the trial court, on July 21, 1987, vacated the order of family administration. The effect of this order was to disinherit the decedent's mother and to constitute Nicole sole heir of the estate.
Helen Robertson appeals, listing three grounds for reversal of the order of July 21, 1987.
In her first point on appeal appellant contends that Nicole cannot be "one of the natural kindred of the deceased" under section 732.108(2)(b), Florida Statutes (1985), because Linda was married to David when the child Nicole was born. Thus Nicole cannot be described as "a person born out of wedlock" as required by law. The statute in question provides:
For the purpose of intestate succession ... a person born out of wedlock is ... a lineal descendant of his father and is one of the natural kindred of all members of the father's family, if:
... .
(b) The paternity of the father is established by an adjudication before or after the death of the father.
(Emphasis added.)
There is a strong presumption that a child born "in wedlock" is legitimate. To overcome that presumption the evidence must be clear and satisfactory and, in order to establish paternity after the death of the putative father, the evidence must be "clear, strong and unequivocal." In re Estate of Broxton, 425 So.2d 23 (Fla. 4th DCA 1982).
In the present case the trial court stated at the hearing on appellant's motion for reconsideration that the evidence of the decedent's paternity was "clear and unequivocal," and that there was no doubt in his mind that the decedent was Nicole's father. We agree with the lower court that the evidence was sufficient to establish the decedent's paternity.
Appellant insists that "there does not exist under current Florida law any statute which would allow children who are presumed legitimate for all purposes to bring an action to bastardize themselves for the purpose of inheriting from a putative father." Such actions were permitted, however, in Williams v. Estate of Long, 338 So.2d 563 (Fla. 1st DCA 1976), and in In Re Estate of Jerrido, 339 So.2d 237 (Fla. 4th DCA 1976), cert. denied, 346 So.2d 1249 (Fla. 1977).
In Williams, the court stated that although the children were born during the existence of a marriage between their mother and a man other than the alleged father, it could not be conclusively assumed that they were legitimate. The court noted that although there is an extremely strong presumption that children born in wedlock are legitimate, such a presumption is rebut-table. In Jerrido, the court held that a mother could testify as to nonaccess of her husband during the period of time in which she conceived three children, where the purpose of the testimony was to establish that another man was the father of those children for heirship purposes.
Williams and Jerrido, however, although decided in 1976, interpreted not section 732.108, Florida Statutes (1985), but section 731.29, Florida Statutes (1973), which was the predecessor to section 732.108. The earlier statute provided in relevant part that "[e]very illegitimate child is an heir ... of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father." As appellant points out, the words "out of wedlock" were not used in the earlier statute.
Appellant argues that the legislature replaced the word "illegitimate" with the words "out of wedlock," and in so doing eliminated any cause of action to establish paternity for heirship purposes by a child born "in" wedlock. A comparison of the two versions of the statute, however, reveals that there was not simply a substitution of certain words, but a complete rewriting of the statute. The later statute is much broader than the one it replaced, being more liberal in allowing for inheritance by an illegitimate child. Moreover, "illegitimate" is defined as "[t]hat which is *102 contrary to law; term is usually applied to children born out of lawful wedlock." Black's Law Dictionary 673 (5th ed. 1979). An "illegitimate" child and a child born "out of wedlock," therefore, are the same. Accordingly, we conclude that the change in the language of the statute did not eliminate the cause of action of a child born in wedlock to establish paternity for heirship purposes.
In Williams and Jerrido the court permitted children to bastardize themselves in order to inherit from the natural father, and in Broxton, 425 So.2d at 23, the court implies that such an action is possible. In the present case, as in Broxton, the bare language of the current statute literally applied does not fit the factual situation. However, since it appears that one of the underlying purposes of the statute is to permit children to inherit from their natural fathers, we conclude that the lower court did not err in applying section 732.108(2), although Nicole was not born "out of wedlock." As stated by this court in Jerrido, a statute legitimating children for inheritance purposes is to be liberally construed to effectuate its purpose. 339 So.2d at 239.
Some time after Nicole was born, the marriage of Linda and David was dissolved. The final judgment in that action refers to Nicole as a child born of the marriage. In her second point on appeal appellant contends that this constitutes an adjudication as to the paternity of Nicole which estops her from now contending that the decedent was her natural father. See Decker v. Hunter, 460 So.2d 1014 (Fla. 3d DCA 1984). See also Herout v. Lawrence, 423 So.2d 558 (Fla. 1st DCA 1982). The feature which prevents the cases so holding from being, by analogy, determinative of the claim of Nicole is the fact that Nicole was not a party to the litigation in which the issue was determined. Therefore she is not precluded by res judicata, collateral estoppel or estoppel by judgment from seeking an adjudication of the issue of paternity in the present case. Cf. Nostrand v. Olivieri, 427 So.2d 374 (Fla. 2d DCA 1983) (putative father of child not barred from bringing action to have himself declared father although natural mother and her former husband had previously acknowledged in dissolution proceeding that child was born of their marriage).
In her third point on appeal appellant argues that Nicole's claim is time barred. There is ample evidence, however, that action was not earlier instigated on Nicole's behalf because of false representations made by appellant. Moreover, in Nardone v. Reynolds, 333 So.2d 25, 36 (Fla. 1976), the supreme court stated:
The purposes of the statutes of limitations are to protect defendants against unusually long delays in filing of lawsuits and to prevent unexpected enforcement of stale claims concerning which interested persons have been thrown off guard for want of reasonable prosecution.
No such protection of appellant's interests are warranted on the facts of this case. Thus, Nicole's claim is not barred (as to appellant) by the statute of limitations. Appellant also contends that Nicole's claim of heirship was barred by section 733.702(1)(b), Florida Statutes (1985), which provides that no claim or demand against a decedent's estate that arose before the death of the decedent is binding unless presented within three years of the decedent's death. This argument was not raised below, so should not be considered on appeal. The argument is without merit at any rate, as Nicole's claim of heirship is not the type of "claim" contemplated by section 733.702(1)(b).
AFFIRMED.
LETTS and GLICKSTEIN, JJ., concur.