**Jeanine JOUBERT, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 04–20969–CIVMART.**

United States District Court, S.D. Florida.

Aug. 8, 2005.

---

Bernard P. Perlmutter, Esq., of the University of Miami School of Law Children & Youth Law Clinic, Coral Gables, FL, for Plaintiff.

Social Security Administration, Marlene Rodriguez, Assistant United States Attorney, Miami, FL, for Defendant.

### MEMORANDUM ORDER AND FINAL JUDGMENT

DUBE, United States Magistrate Judge.

THIS CAUSE is before the Court on the Motion for Summary Judgment filed by the Defendant (D.E.# 25) and the Motion for Summary Judgment filed by the Plaintiff (D.E.# 33) pursuant to the consent of the parties and an Order of Refer-

ence entered by the Honorable Jose E. Martinez, United States District Judge. The Court has reviewed the motions, the file in this cause and has heard argument of counsel. The issue in this case is whether Plaintiff Jeanine Joubert ("Joubert") was properly found to be ineligible for supplemental security income benefits based on her alien status.

## I. *DISCUSSION*

### A. Statement of Facts

Joubert filed an application for supplemental security income (SSI) benefits on August 6, 2002 (R. 28).[1] This application was denied initially and on reconsideration based on a finding that the Plaintiff did not qualify as a Cuban/Haitian entrant. (R. 36, 49). The Plaintiff requested a hearing before an ALJ (R. 64), but the ALJ determined that a favorable decision could be issued without the need for a hearing. (R. 15). In the decision, entered on October 22, 2003, the ALJ found that the Plaintiff was eligible for supplemental security income based on her status as a Cuban–Haitian entrant and determined that the case should be returned to the appropriate state agency for a disability determination. (R. 15–22).

On December 9, 2003, the Regional Commissioner submitted a memorandum to the Office of Appellate Operations which recommended reopening and reconsidering the decision. (R. 75). The Appeals Council issued a Notice on January 5, 2004, indicating that it was reopening the decision by the ALJ based on the conclusion that the decision was erroneous. (R. 112). The notice provided the Plaintiff with the opportunity to present additional evidence within 30 days or to request oral argument before the Appeals Council. (R. 113).

The Appeals Council issued a decision on February 24, 2004, noting the lack of response to the January 5, 2004 notice and finding that the Plaintiff did not meet the alien residency requirements for supplemental security income eligibility. (R. 8). According to the Appeals Council, the ALJ erred in finding that the Plaintiff attained Cuban/Haitian entrant status based on her being granted the status of a Special Immigration Juvenile (SL6) on April 8, 1999. The Appeals Council added:

> A questionnaire completed by the Immigration and Naturalization Service indicates that the claimant did not have status as a Cuba/Haitian Entrant (Exhibit AC–6). This was confirmed by telephone by the Department of Homeland Security on April 4, 2003 (Exhibit AC–10). The Council observes that, although the claimant is a *qualified alien* based on her admittance to the United States for permanent residence, she does not meet any of the additional requirements for eligibility for supplemental security income. Special Immigrant Juvenile status under section 1101(J) of the Immigration and Naturalization Act does not constitute one of the five designated alien status classifications which would confer upon the claimant the necessary status to be eligible for supplemental security income (see Programs Operations Manual System (POMS) SI 00502.100.A3) (Exhibit AC–12).

(R. 10) (emphasis in original).

In addition to the above referenced matters, the record contains documents related to the Plaintiff's immigration status. A Non–Immigrant Information and Alien Status Verification Display from the Immigration and Naturalization Service indicates that the Plaintiff was born in Haiti

---

**1.** All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

on June 20, 1983 and that she entered this country on February 27, 1998. The INS status listed on the form is "SL6." (R. 31).

A questionnaire completed by the INS states that the Plaintiff was lawfully admitted for permanent residence in the United States; that she is a national of Haiti who is not subject to a final order of removal and that she was never put in proceedings for exclusion, removal or deportation. The form also indicates that the Plaintiff never had an application for asylum pending before the INS and that she was not paroled into the United States. (R. 40–45). The Commissioner relied on this form in denying the application on reconsideration (R. 49) and referenced it in the Decision of the Appeals Council, as quoted above. (R. 10).

The Appeals Council decision also referenced a telephone contact with the Department of Homeland Security. The handwritten report of that contact on April 4, 2003, states as follows:

Per Regional office even though she is a Special Immigrant Juvenile she does not qualify as a Cuban Haitian entrant. They contacted Central Office in Baltimore who in turn contacted the Department of Homeland Security (INS) and she does not qualify for the Cuban Haitian status.

(R. 74).

In addition to the material contained in the administrative record, both parties have filed affidavits in connection with their Motions for Summary Judgment. The Defendant submitted an affidavit from Bruce Marmar, District Adjudications Officer for the Examinations Unit in the Miami District for United States Citizenship & Immigration Services (USCIS), an agency of the Department of Homeland Security. (R. 27). In the affidavit, Marmar states

that a review of the Plaintiff's immigration file indicates that there is no evidence of an inspection by an immigration officer when she arrived in the United States. Therefore, according to Marmar, it appeared that the Plaintiff entered the United States "without having been admitted or paroled by an immigration officer pursuant to section 212(d)(5) of the Immigration and Nationality Act.(INA)." The affidavit also states:

3. Notwithstanding, Ms. Joubert was "deemed" paroled into the United States for the **exclusive** purpose of adjusting her status as a special immigrant juvenile (SIJ) pursuant to section 245(h) of the INA.

(D.E.# 27, ¶ 3)(emphasis in original).

The Plaintiff submitted an affidavit from Professor Troy E. Elder, which, after detailing his experience and background, states that the Immigration and Nationality Act provides that immigrants who obtain status as a lawful permanent resident under 8 U.S.C. § 1101(a)(27)(J) are considered to have been paroled into the United States. According to Elder, based on this status, the Plaintiff therefore is properly classified as "an individual granted parole status" under Section 501(e) of the Refugee Education and Assistance Act. Thus, the Plaintiff met the alien eligibility requirements to qualify for Supplemental Security Income benefits. (D.E.# 29).[2]

**B. The Applicable Law**

 Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,*

---

**2.** The *ore tenus* motion to strike this affidavit made by the Defendant during the hearing

held by this Court is **DENIED**.

402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Kelley v. Apfel,* 185 F.3d 1211, 1213 (11th Cir.1999); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater,* 67 F.3d 1553 (11th Cir. 1995); *Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. *See, Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See, Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991); *Baker v. Sullivan,* 880 F.2d 319 (11th Cir.1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir.1991); *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–1146 (11th Cir.1991).

The resolution of the Motions for Summary Judgment before this Court involves the interaction between several laws providing for the classification of persons entering the United States. In particular, the focus is on how a person is classified as a "Cuban–Haitian entrant" and how that categorization impacts the entitlement to benefits.

The starting point in analyzing the issues presented is the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), which essentially provides that an alien who is not a "qualified alien" is not eligible for any Federal public benefit. 8 U.S.C. § 1611(a). There are several definitions of "qualified alien" found in this Act, including an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act, and "an alien who is a Cuban and Haitian entrant (as defined in section 501(e) of the Refugee Education Assistance Act of 1980)." 8 U.S.C. § 1641(b)(1); (b)(7).

Even if someone is a "qualified alien" they are generally not eligible for Social Security Income benefits. However, there are exceptions to this exclusion, including one for "Cuban/Haitian entrants." 8 U.S.C. § 1612. This category is further defined by reference to the Section 501(e) of the Refugee Education Assistance Act of 1980 (REAA) which states as follows:

(e) As used in this section, the term "Cuban and Haitian entrant" means-

(1) any individual granted parole status as a Cuban/Haitian Entrant (Status Pending) or granted any other special status subsequently established under the immigration laws for nationals of Cuba or Haiti, regardless of the status of the individual at the time assistance or services are provided; and

(2) any other national of Cuba or Haiti-

(A) who-

(i) was paroled into the United States and has not acquired any other status under the Immigration and Nationality Act[this chapter];

(ii) is the subject of removal proceedings under the Immigration and Nationality Act [this chapter]; or

(iii) has an application for asylum pending with the Immigration and Naturalization Service; and

(B) with respect to whom a final, nonappealable, and legally enforceable order of removal has not been entered.

8 U.S.C. § 1522 note.

Several other provisions of the applicable statutes and regulations impact on the determination of the issue before this Court, including the following regulation related to the parole of Cuban and Haitian nationals:

(h) Effect of parole of Cuban and Haitian nationals.

(1) Except as provided in paragraph (h)(2) of this section, any national of Cuba or Haiti who was paroled into the United States on or after October 10, 1980, shall be considered to have been paroled in the special status for nationals of Cuba or Haiti, referred to in section 501(e)(1) of the Refugee Education Assistance Act of 1980, Public Law 96–422, as amended (8 U.S.C. 1522 note).

(2) A national of Cuba or Haiti shall not be considered to have been paroled in the special status for nationals of Cuba or Haiti, referred to in section 501(e)(1) of the Refugee Education Assistance Act of 1980, Public Law 96–422, as amended, if the individual was paroled into the United States:

(i) In the custody of a Federal, State or local law enforcement or prosecutorial authority, for purposes of criminal prosecution in the United States; or

(ii) Solely to testify as a witness in proceedings before a judicial, administrative or legislative body in the United States.

8 C.F.R. § 212.5(h). *See also,* POMS SI 0052.108B (containing same definitions).

Additionally, statutes relating to the Special Immigrant Juvenile status (SIJ) effect the resolution of the issues presented. The first, 8 U.S.C. § 1101(a)(27)(J), defines a special immigrant juvenile as follows:

(J) an immigrant who is present in the United States-

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State and who has been deemed eligible by that court for long-term foster care due to abuse, neglect or abandonment;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Attorney General expressly consents to the dependency order serving as a precondition to the grant of special immigration juvenile status; except that-

(I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney General unless the Attorney General specifically consents to such jurisdiction; and

(II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this sub-

paragraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

Other provisions dealing with SIJ applications are found in 8 U.S.C. § 1255(a) and § 1255(h), which state:

(a) Status as person admitted for permanent residence on application and eligibility for immigrant visa.

The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 1154(a)(1) of this title or may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(h) Application with respect to special immigrants.

In applying this section to a special immigrant described in section 1101(a)(27)(J) of this title-

(1) such an immigrant shall be deemed for purposes of subsection (a) of this section, to have been paroled into the United States; and . . .

According to the Plaintiff, these provisions require a finding that Joubert qualified as a Cuban–Haitian entrant, and thus, would be entitled to SSI benefits. In its decision, the Appeals Council determined that the SIJ status did not constitute one of the five designated alien status classifications found in the Programs Operations Manual System (POMS) which would allow for eligibility. The dispute before this Court involves only one of these classifications: "Cuban/Haitian entrant under one of the four categories in Section 501(e) of the Refugee Education and Assistance Act of 1980 (see *SI 00502.108B.*)" POMS SI 00502.100.A.3. (R. 103).

Several points are not in dispute—that the Plaintiff is a "qualified alien"; that the Plaintiff is a Haitian national and that she was classified as a Special Immigrant Juvenile (SIJ). The focus of the present dispute is whether the fact that the Plaintiff was "deemed paroled" into the United States under 8 U.S.C. § 1255(h) also constitutes "parole" for purposes of Section 501(e) of the REAA. The Plaintiff, looking to the language of these provisions as well as the applicable POMS and the provisions of 8 C.F.R. § 212.5(h), contends that she was properly paroled and thus, meets the alien status required for SSI benefits. The Defendant, on the other hand, focuses on the language in § 1255(h), which indicates that parole is for purposes of § 1255(a), to support its argument that the Plaintiff's parole status is not applicable for SSI benefits.

This Court finds that the reading of the provisions by the Defendant is strained and contrary to the overall meaning of the various provisions as well as the benefit policies directed to both Haitians and juveniles. The presence of the phrase "deemed for purposes of subsection (a)" found in § 1255(h), does not in any way mean that the subject immigrant might not be found paroled for other purposes as well. The statute does not state that this is the only purpose that the immigrant may be found to be paroled, rather it is merely a statement as to one scenario in which this condition will be applied. Thus, the primary contention raised by the Defendant is seen as of limited validity.

Additionally, the language of the other provisions support the view asserted by

the Plaintiff. Specifically, 8 C.F.R. § 212.5(h) and the POMS cited above, clearly provide that the REAA status will apply to "any national of Cuba or Haiti who was paroled into the United States on or after October 10, 1980." There is no limitation language in this provision relating to paroled for certain reasons but not others, rather, "any national," subject to two exceptions, will be accorded the parole status. There has been no argument made that the Plaintiff falls within the exceptions noted in these provisions. The Court also notes the language contained in the POMS related to the ability to be a Cuban Haitian entrant and have an LAPR status. While the Defendant cites to a form and a telephone contact with the Department of Homeland Security regarding the Plaintiff's status, these documents cannot overcome the clear language of the regulations, including those relating to both the Department of Homeland Security and to the Social Security Administration.

The Appeals Council erred in determining that the Plaintiff was not qualified to receive SSI benefits based on her alien status. As set out above, this Court finds that the Plaintiff should be seen as a Cuban–Haitian entrant, and thus, eligible for SSI income benefits, if appropriate, following a disability determination.

## II. CONCLUSION

Based on the foregoing, this Court finds that the decision issued by the Commissioner determining that the Plaintiff did not qualify as Cuban–Haitian entrant was error. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Defendant (D.E.# 25) is **DENIED**.

(2) The Motion for Summary Judgment filed by the Plaintiff (D.E.# 33) is **GRANTED**.

(3) The decision by the Commissioner is **REVERSED** and this cause **REMANDED** for further proceedings.

(4) Any pending motions are deemed **MOOT** and this case is hereby **CLOSED**.